**WOODWORKERS TOOL WORKS v. BYRNE.**

No. 12548.

United States Court of Appeals
Ninth Circuit.
Sept. 14, 1951.

Tripp & Callaway, Los Angeles, Cal., for appellant.

John W. Olson, Los Angeles, Cal., for appellee.

Before BIGGS, HEALY and POPE, Circuit Judges.

BIGGS, Circuit Judge.

Byrne, a citizen of the State of California, sued the defendant-appellant, Woodworkers Tool Works, an Illinois corporation, bottoming jurisdiction on diversity of citizenship and jurisdictional amount. Section 1332, Title 28 United States Code. Byrne in his first amended complaint alleg-

ed that as an employee of Selby Company he was engaged in cutting lumber with a shaper equipped with a new panel raiser head manufactured and sold by the appellant and that the head broke due to structural defects and injured him.

A summons in the usual form issued to Woodworkers Tool Works requiring it to serve an answer on Bryne's attorney. The United States Marshal made the following return: "I hereby certify and return that I served the annexed Summons and Complaint on the therein named Elmer Preuer as agent for *Woodworkers Supply Company* by handing to and leaving a true and correct copy thereof with Elmer Preuer personally at Los Angeles * * *" (Emphasis added). The discrepancy between the party that Byrne wished to have served, i. e., Woodworkers Tool Works, and the person who was actually served, i. e., Woodworkers Supply Company, is apparent. Woodworkers Tool Works moved to dismiss the action or, in lieu thereof, to quash the return of the service of summons on the ground that Woodworkers Tool Works had not been served properly with process, filing in support of its motion affidavits of Preuer and Dunne.

The Preuer affidavit states that he is the sole owner of Woodworkers Supply Company described as a "proprietorship",[1] and that " * * * he is not an officer, a managing or general agent, or an agent authorized by appointment or law to receive service of process for and/or on behalf of Woodworkers Tool Works, a corporation, * * * organized and existing under * * * the laws of the State of Illinois * * *" Dunne's affidavit avers that he is counsel for Woodworkers Tool Works and that neither that company "nor any of its agents or employees" had been served with process in the action and that Woodworkers Tool Works at the time of the service of process on Preuer, and thereafter, was not doing business in the State of California "so as to render it amenable to the service of process in this action".

The affidavits of Taylor and Walker were filed by Byrne in defense of the service made upon Preuer. Taylor alleged that as an investigator employed by Pacific Employers' Insurance Company he had investigated the circumstances surrounding the sale to the Selby Company of the panel raiser head; that his investigation revealed that Selby Company through its manager, Walker, had called Woodworkers Supply Company and had asked that Woodworkers Supply Company send a representative to Selby Company's plant; that Townsend, a representative of Woodworkers Supply Company, had visited Selby Company in response to this request and showed Walker a catalogue of the appellant, Woodworkers Tool Works, and that Walker had ordered the panel raiser head from the catalogue through Townsend; that a purchase order signed by Selby Company was sent to Woodworkers Supply Company and an invoice was prepared by Woodworkers Supply Company for the purchase of the panel raiser head from the appellant; that Woodworkers Supply Company billed Selby Company directly; and that the panel raiser head was delivered by air express from Woodworkers Tool Works directly to Selby Company. Taylor swore also that he had been informed by Preuer that Woodworkers Supply Company kept a copy of appellant's catalogue and that he, Taylor, saw this; that on its face appeared the words "Woodworkers Tool Works" with a Chicago address. Taylor also stated that at no time did Selby Company "directly contact" the appellant and that "all contacts were exclusively through Woodworkers Supply Company". A copy of the Woodworkers Supply Company's invoice is attached to Taylor's affidavit and it states that the panel raiser head was "shipped directly to customer from factory".

Walker in his affidavit swore that as manager of Selby Company he telephoned Woodworkers Supply Company and requested that they send a salesman to see him; that thereafter Townsend visited

1. See Section 2466, Civil Code of California (Deering 1937). Preuer was the owner of Woodworkers Supply Company.

See Taylor's affidavit. See also Preuer's testimony, pp. 228–229 of the transcript of the proceedings at the trial.

Walker at the Selby Company plant, bringing with him a catalogue entitled "Woodworkers Tool Works" and that he, Walker, ordered the panel raiser head from this catalogue; that Townsend informed him that the panel raiser head was manufactured by the appellant and that he, Townsend, "as salesman for Woodworkers Supply Company" represented the Woodworkers Tool Works. Walker's affidavit corroborated that of Taylor in many particulars but Walker also swore that "Selby Company was billed by Woodworkers Supply Company in the total amount of $83.61, * * * [that] sum representing the purchase price of $75.00, $1.88 tax, and $6.73 representing two telephone calls to Woodworkers Tool Works from Woodworkers Supply Company", and that to Walker's "own personal knowledge" the Selby Company, through Walker, had ordered "other products from Woodworkers Tool Works through the Woodworkers Supply Company."

Upon consideration of the pleadings and the affidavits, the court below denied the appellant's motion to dismiss the action or to quash the service of the summons and required the appellant to answer.

Shortly thereafter Byrne filed a second amended complaint in which liability was sought to be enforced on an additional ground, viz., that Woodworkers Tool Works was negligent and careless in the manufacture, sale and delivery to Selby Company "of a structurally defective panel head". Liability in the first amended complaint had been based upon the theory of a warranty by the appellant that the panel raiser head was safe for use. Woodworkers Tool Works moved to dismiss the cause of action based on warranty. The court below, holding that since its jurisdiction was based on diversity the questions of substantive law presented were to be governed by California law,[2] and that under that law liability must depend on negligence and not on warranty under the circumstances at bar, dismissed Byrne's first cause of action. The parties thereupon proceeded to trial on the second cause of action based on negligence.[3]

At the trial Selby, of Selby Company, testified that the panel raiser head was delivered to his company by Woodworkers Tool Works by air express; that he knew Townsend and that Selby Company got a bill from Woodworkers Supply Company for the head;[4] and that Selby Company received a "manifest" from Woodworkers Supply Company. Townsend testified that he was a machine salesman for Woodworkers Supply Company and that he took the order from the Selby Company for the panel raiser head and sent it to the appellant; that the head was shipped direct to the customer;[5] that Woodworkers Supply

2. Citing Meredith v. Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9.

3. The ruling of the trial court was correct in this respect. See California Civil Code, Section 1735 and Kalash v. Los Angeles Ladder Co., 1 Cal.2d 229, 34 P.2d 481. The case then was brought on for trial.

4. Objections were made to this testimony and that of a similar kind which followed it on the ground of immateriality but objections were overruled by the court. Thereafter, counsel for Byrne pointed out that the line of questioning connected with the issue of service had been settled by the order of the court overruling the motion to quash the service. The court replied: "The relationship between the parties may be shown. The legal effect will be determined by the court." The court went on to say, "There is no harm in showing the purchase was not direct from the defendant. I will instruct the jury as to the theory of liability." In response to Byrne's counsel's further objections pointing out that the line of questions seemed intended to effect the "reopening the question of jurisdiction", the court said, "There is no question of jurisdiction being raised at the present time." Counsel for the appellant did not state at this juncture that the questions were asked in order to show lack of jurisdiction over the appellant or that he was opening any question as to the adequacy of service.

5. At this point counsel for Byrne again renewed his objections that the questions went to the jurisdiction of the court over the person of the appellant. Again, the learned trial judge overruled the objections, stating "They [Woodworkers Tool Works] have submitted to jurisdiction. They have not attacked the

Company handled hundreds of items *not* manufactured by Woodworkers Tool Works; that Woodworkers Supply Company sells woodworking machinery and supplies retail; and that Woodworkers Supply Company billed the Selby Company direct for the panel raiser head.

Knourek, vice-president of Woodworkers Tool Works, testified by deposition that his company had no salesmen or agents or place of business in California and that Preuer was not an employee of his company or "authorized to act as * * * [that company's] agent." He stated that the relationship between Woodworkers Tool Works and Woodworkers Supply Company was simply that of vendor and vendee.

Preuer's evidence at the trial was particularly helpful to Byrne on the question of jurisdiction. He was asked what relationship he had with Woodworkers Tool Works and he replied, "We buy and sell machinery and supplies, and in our course of business there are certain items that are manufactured by the Woodworkers Tool Works which we sell on a commission basis." The commission was apparently 10% after purchase price. Preuer stated: "They [Woodworkers Tool Works] would bill us, if an item were $75.00 they would bill us $75.00 less 10 per cent." Preuer was also asked, " * * * how often during a given year would you say you sell Woodworkers Tool Works products?", and he replied, " * * * that is rather irregular. In other words we may have half a dozen invoices [one year], and none the next." But in reply to the question, "But you do have a running course of business with them every year?", Preuer replied, "That is right." He then testified that there were "some items" manufactured by Woodworkers Tool Works which Woodworkers Supply Company sold "at all times". It is not clear from the evidence that the panel raiser head which was used by Byrne was sold by Woodworkers Supply Company for Woodworkers Tool Works on a com-

mission basis though perhaps such an inference would be supportable. The court below made no specific finding on this point since it did not deem the issue to be open at the time this testimony was received. See note 4, supra, and what follows hereinafter.

■ We reiterate that at no time during the trial did counsel for Woodworkers Tool Works inform the court below that an attempt was being made to demonstrate that Woodworkers Supply Company was not an agent of the appellant or to raise anew the issue as to whether the service of the summons should be quashed. We do not mean to suggest in referring to the testimony taken at the trial that an issue as to the sufficiency of the service should necessarily be pursued beyond the time of answer but if neither the appellant nor any of its agents were served in California, the question is one of due process and is open to further examination. Cf. Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565, with Milliken v. Meyer, 311 U.S. 457, 461–464, 61 S.Ct. 339, 85 L.Ed. 278. At trial a judgment was rendered in favor of Byrne and Woodworkers Tool Works has appealed.

■ It must be determined whether the service made was sufficient to bring the appellant, Woodworkers Tool Works, into court. One facet of this problem depends upon the sufficiency of the return made by the United States Marshal which we have quoted above. The Marshal did not purport to make service on Preuer as an agent for Woodworkers Tool Works. He purported to serve Preuer as "agent for Woodworkers Supply Company". At common law a return such as the Marshal made here would have been fatally defective. At common law the return was an essential part of the record. It was evidence of the fact of service without which no further proceedings that depended on the validity of the service could be had and no valid judgment could be entered.[6] A return of service when made could not be amended. The law is very much to the contrary to-

jurisdiction." The court also stated that there was "nothing to be submitted to the jury" on the question of jurisdiction.

6. See Stephens' Pleading, p. 21, 1867 ed. (Heard). For a typical case see Gibbons v. Mason, 1 Har., Del., 452, 453.

day. See Rule 4(h), Fed.Rules Civ.Proc. 28 U.S.C.A., which provides for amendment upon which terms as to the court may seem just unless it shall clearly appear that material prejudice would result to the substantial rights of the party against whom the process issued. It does not appear from anything in the record before us that material prejudice would result to Woodworkers Tool Works, or to its rights if the return of service was amended to show that process had been served by the United States Marshal on Preuer as agent for Woodworkers Tool Works instead of upon Woodworkers Supply Company.

The substantial question for our determination is a more serious one. It may be phrased as follows: Under the circumstances as shown by the affidavits and oral evidence can it be said that the appellant was doing business within the State of California for the purpose of valid service in an action arising out of an article admittedly manufactured by it and sold either by it or by Woodworkers Supply Company for it in the State of California? The answer to this question is not an easy one.[7]

■ A leading decision on this subject is International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 158, 90 L.Ed. 95, though there the Supreme Court of the United States was dealing with the Fourteenth Amendment as construed by the Supreme Court of Washington. See 22 Wash.2d 146, 154 P.2d 801. The question, however, whether it be phrased in terms of the Fourteenth or Fifth Amendment, is one of due process of law. In the International Shoe Company case Mr. Chief Justice Stone pointed out that the corporate personality, albeit a fiction, is intended to be acted upon as though it were a fact and that unlike an individual a corporation's presence, whether within or without the state of its origin, can be manifested only by activities carried on in its behalf by those authorized to act for it; that the demands of due process may be met by such contacts of the corporation within the state of the forum as to make it reasonable to require the corporation to defend the particular suit which is brought there; that, citing Hutchinson v. Chase & Gilbert, 2 Cir., 45 F.2d 139, 141, "An 'estimate of the inconveniences' which would result to the corporation from a trial away from its 'home' or principal place of business is relevant in this connection"; and that "Presence" in the state in which the suit is brought, in this sense, has never been doubted where "the activities of the corporation there have not only been continuous and systematic, but also give rise to the liabilities sued on, even though no consent to be sued or authorization to an agent to accept service of process has been given." Mr. Chief Justice Stone went on to say, "Conversely it has been generally recognized that the casual presence of the corporate agent or even his conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to suit on causes of action unconnected with the activities there. * * * To require the corporation in such circumstances to defend the suit away from its home or other jurisdiction where it carries on more substantial activities has been thought to lay too great and unreasonable a burden on the corporation to comport with due process." The International Shoe Co. case, 326 U.S. at pages 316–317, 66 S.Ct. at page 159.[8]

■ If we consider all of the evidence contained in the affidavits without regard to that received orally at the trial, going to the issue of whether Woodworkers Tool Works had constituted Preuer or Woodworkers Supply Company *by law* an agent in California to receive service of process

7. Rule 4(d) (3), F.R.C.P. provides, Service of summons and complaint upon a foreign corporation must be made "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment *or by law* to receive service of process * * *." (Emphasis added.)

8. Cf. Mississippi Pub. Corp. v. Murphree, 326 U.S. 438, 440, 442, 66 S.Ct. 242, 90 L.Ed. 185; Nippert v. Richmond, 327 U.S. 416, 422–424, 66 S.Ct. 586, 90 L.Ed. 760; Prudential Ins. Co. v. Benjamin, 328 U.S. 408, 416, 66 S.Ct. 1142, 90 L.Ed. 1342; Travelers Health Ass'n v. Virginia, 339 U.S. 643, 648, 651 and 654, 70 S.Ct. 927, 94 L.Ed. 1154.

on its behalf, we are forced to the conclusion that the evidence was insufficient to demonstrate that this issue should be resolved in favor of Byrne. In making this statement we assume that the inferences most favorable to Byrne are to be taken from the evidence.

There was evidence that Woodworkers Tool Works' activities in the State have been continuous and systematic for Preuer testified that "some items" manufactured by Woodworkers Tool Works were sold by Woodworkers Supply Company "at all times".[9] There was undisputed testimony that Woodworkers Tool Works' products were sold by Woodworkers Supply Company "on a commission basis". It was shown that the panel raiser head was shipped direct by Woodworkers Tool Works to Selby Company. Here the suit is related directly to the activity which was carried on by Woodworkers Tool Works, viz., the sale of the panel raiser head.[10] The facts of the instant case are so close to those of International Harvester Co. v. Com. of Kentucky, 234 U.S. 579, 587, 34 S.Ct. 944, 58 L.Ed. 1479 [11] that, if there was no more recent authority, we would deem that decision to be persuasive.

We reach the conclusion, as we have stated, that the evidence before the court below prior to that offered at the trial was insufficient to permit the court below to find that Woodworkers Tool Works had constituted Woodworkers Supply Company, viz., Preuer, its agent for the service of process in California and that therefore the court below erred in denying the motion to quash the service of the summons. But if there be added to the evidence which was before the court at the time of the denial of the motion to quash the service of the summons the evidence adduced at the trial, particularly that of Preuer hereinbefore referred to there might be a basis to sustain a conclusion that Woodworkers Tool Works had made Preuer its agent. This issue cannot be resolved without a finding thereon by the trier of fact and therefore upon remand it will be necessary for the court below to make an appropriate finding upon the present record.

■■■ Woodworkers Tool Works contends also that Byrne failed to produce any evidence of negligence upon its part or of its causal connection with the accident. It asserts, therefore, that the trial court erred in denying its motions for nonsuit, for a directed verdict and for judgment *non obstante veredicto*. Woodworkers Tool Works even goes so far as to contend that the evidence failed to establish any causal connection between the breaking of the panel raiser head and the injury sustained by Byrne. To state the facts shown by the evidence is quite sufficient to refute the contention last stated. The panel raiser head was being used by Byrne to cut soft white pine which was being manufactured by Selby Company into door panels. The panel raiser head was revolving at about 7,200 revolutions a minute as Byrne operated it. Suddenly there was a "sharp click" and Byrne dropped to the floor, getting under the table at which he had been working. He stayed there " * * * until it had quieted down and things had stopped dropping. It was then discovered that the panel raiser head had split apart and that Byrne's hand was cut across the palm and that "his little finger was just barely on". We entertain no doubt that the jury was entitled to find that Byrne's injuries had been sustained because a piece of the fractured panel raiser head, traveling at very high speed, had struck his hand. Indeed such a conclusion would seem to be the only proper one which could be made under the circumstances. There was direct evidence as to the cause of the injury, however. Dr. Detwiler testified that there was no question but that a "metallic instrument" had caused the injury and

9. Cf. Milbank v. Standard Motors Construction Co., 132 Cal.App. 67, 71, 22 P. 2d 271, 272.

10. See Kane v. New Jersey, 242 U.S. 160, 37 S.Ct. 30, 61 L.Ed. 222; Smolik v. Philadelphia & Reading Co., D.C., 222 F. 148, 151. Cf. Rosenberg Bros. & Co. v.

Curtis Brown Co., 260 U.S. 516, 43 S. Ct. 170, 67 L.Ed. 372.

11. See also St. Clair v. Cox, 106 U.S. 350, 1 S.Ct. 354, 27 L.Ed. 222, and Pennsylvania Lumbermen's Ins. Co. v. Meyer, 197 U.S. 407, 414–415, 25 S.Ct. 483, 49 L.Ed. 810.

this was demonstrated by the fact that the hand was "chewed up" like "hamburger" and the bone broken.

■ As to defects in the panel raiser head the testimony of Byrne's expert witness, Cheney, makes clear that the defects in the steel casting were apparent without microscopic or X-ray examination. In response to the question, "In your opinion were those blow holes and the excessive porosity in that cast steel discernible to the naked eye before the arm broke?", Cheney replied, "Yes, I think fairly careful inspection would show them." Cheney also testified that before the blow holes and porosities had been filled up by the paint applied by Woodworkers Tool Works they would have been even more apparent. Woodworkers Tool Works insists that the panel raiser head had been repeatedly inspected by it and that no defects were apparent. This question, like that referred to in the preceding paragraph of this opinion, was for the jury. There was also evidence that X-ray examination would have disclosed the defects in the metal. It follows that the motions were properly denied.

■ Woodworkers Tool Works contends that the trial court's charge to the jury on the application of the doctrine of *res ipsa loquitur* was prejudicially erroneous. This question of course is to be determined by the law of California since jurisdiction in the case at bar is based upon diversity. Woodworkers Tool Works insists that the doctrine of *res ipsa loquitur* is not applicable because the "basic requisites" of "exclusive control" and "probability of negligence" were not proved by Byrne, citing, *inter alia,* Gerhart v. Southern California Gas Co., 56 Cal.App.2d 425, 431, 132 P.2d 874, Laganzo v. San Joaquin L. & P. Corp., 32 Cal.App.2d 678, 695, 90 P.2d 825, and Honea v. City Dairy, Inc., 22 Cal.2d 614, 616, 140 P.2d 369, 373. Woodworkers Tool Works points out that the panel raiser head was shipped by air express from Chicago to Selby Company in Burbank, was received by the latter and handed over to Chirby, an employee of General Panel Corporation, Selby Company's landlord; that Chirby removed the panel raiser head from its container and that he and other persons, including Byrne, inspected the device; that later Chirby and Byrne installed the panel raiser head on the shaper and that the device was used prior to the day of the accident and also had been in use on the morning of the day of the accident. Woodworkers Tool Works insists that since at least five days had intervened between the time the panel raiser head left its plant in Chicago and the happening of the injury, that anything that transpired during that interval was beyond its exclusive control.

■ The Supreme Court of California in Escola v. Coca-Cola Bottling Co. of Fresno, 1944, 24 Cal.2d 453, 457, 459, 150 P.2d 436, 438–439, states categorically, "Res ipsa loquitur does not apply unless (1) defendant had exclusive control of the thing causing the injury and (2) the accident is of such a nature that it ordinarily would not occur in the absence of negligence by the defendant." The Court, by Chief Justice Gibson, went on to say: "Many authorities state that the happening of the accident does not speak for itself where it took place some time after defendant had relinquished control of the instrumentality causing the injury. Under the more logical view, however, the doctrine may be applied upon the theory that defendant had control at the time of the alleged negligent act, although not at the time of the accident, *provided* plaintiff first proves that the condition of the instrumentality had not been changed after it left the defendant's possession. See cases collected in Honea v. City Dairy, Inc., 22 Cal. 2d 614, 617, 618, 140 P.2d 369. As said in Dunn v. Hoffman Beverage Co., 126 N.J.L. 556 [559], 20 A.2d 352, 354, 'defendant is not charged with the duty of showing affirmatively that something happened to the bottle after it left its control or management; * * * to get to the jury the plaintiff must show that there was due care during that period.' Plaintiff must also prove that she handled the bottle carefully. The reason for this prerequisite is set forth in Prosser on Torts, supra, at page 300, where the author states: 'Allied to the condition of exclusive control in the defendant is that of absence of any action on the part of the plaintiff contributing to the accident.

Its purpose, of course, is to eliminate the possibility that it was the plaintiff who was responsible. If the boiler of a locomotive explodes while the plaintiff engineer is operating it, the inference of his own negligence is at least as great as that of the defendant, and res ipsa loquitur will not apply until he has accounted for his own conduct.' See, also, Olson v. Whitthorne & Swan, 203 Cal. 206, 208, 209, 263 P. 518, 58 A.L.R. 129. It is not necessary, of course, that plaintiff eliminate every remote possibility of injury to the bottle after defendant lost control, and the requirement is satisfied if there is evidence permitting a reasonable inference that it was not accessible to extraneous harmful forces and that it was carefully handled by plaintiff or any third person who may have moved or touched it. Cf. Prosser, supra, p. 300. If such evidence is presented, the question becomes one for the trier of fact (see, e. g., MacPherson v. Canada Dry Ginger Ale, Inc., 129 N.J.L. 365, 29 A.2d 868, 869), and, accordingly, the issue should be submitted to the jury under proper instructions."

It must be borne in mind, however, as Chief Justice Gibson later points out in Escola v. Coco-Cola Bottling Co. of Fresno, supra, 24 Cal.2d at page 459, 150 P.2d at page 439 that: "The question is [always] whether under the evidence there was a probability that defendant was negligent in any of these respects. If so, the doctrine of res ipsa loquitur applies." In Ybarra v. Spangard, 1945, 25 Cal.2d 486, 489, 154 P.2d 687, 689, 162 A.L.R. 1258, a third condition, in addition to those set forth in the preceding paragraph as "(1)" and "(2)", and clearly implied in the Escola case, is expressly stated, viz., "(3)" "* * * [the accident] * * * must not have been due to any voluntary action or contribution on the part of the plaintiff",[12] citing Prosser on Torts, supra, at p. 295. The principles of law governing the application of the doctrine of res ipsa loquitur as set out in the Ybarra case are the same as in the Escola decision, but it is clear that the principle of res ipsa loquitur broadly applied in Escola is not limited, as Woodworkers Tool

Works contends, to "bottle" cases for the Ybarra case deals with injuries incurred by a patient while undergoing an operation in a hospital. It is clear, therefore, that the Supreme Court of California has intended to and has applied the doctrine in a broad and enlightened fashion.

■ May the principle be properly applied in the case at bar? We conclude that it may. The circumstances as demonstrated by the evidence are such that the requirements of res ipsa loquitur are easily met. The broken part of the panel raiser head was put in evidence. The blow holes and porosities of the fractured part are clearly visible to the naked eye, even without regard for fracture lines. There was testimony that prior to the painting of the device by Woodworkers Tool Works the imperfections were all the more apparent. There was evidence that the imperfections could have been discovered by ordinary visual inspection. There was also evidence that the large blow hole would have been readily disclosed by X-ray examination. The defects were and could have been caused only in the casting of the metal. They could not have been created by rough handling in shipment or by error in installation. Other possible causes of fracture to the panel raiser head were eliminated by the evidence. The castings were made by Gunite Foundries of Rockford, Illinois, according to the testimony of Nourek, and the panel raiser head was made by Woodworkers Tool Works from these castings. It follows therefore that Woodworkers Tool Works may be found to be legally liable for Byrne's injuries.

■ The charge of the court, however, was insufficient. The learned trial judge called attention to the pertinent doctrine of inspection but did not charge in the terms of the Escola case, viz., that Woodworkers Tool Works had exclusive control of the creation of the panel raiser head and that it was negligence to include a casting, the defect in which could have been disclosed by reasonable examination of the head. He did not charge the jury as to the conditions under which X-ray examinations would

12. No issue of negligence on Byrne's part has been included by the appellant in its statement of points on appeal.

have been justified or required. The trial court did not charge that the accident was of such a nature that ordinarily it would not have occurred in the absence of negligence of the appellant. The trial court did not inform the jury that to find Woodworkers Tool Works liable under the doctrine of *res ipsa loquitur* the jury would also have to find that Byrne had not been guilty of any negligent conduct. It may be that the trial court omitted to charge upon this point because there is little if any evidence of negligence [13] on Byrne's part and Woodworkers Tool Works, seemingly, did not take the position that he was in fact negligent.

■ We are of the opinion that Woodworkers Tool Works may not take advantage of any error in the charge as to *res ipsa loquitur* to procure a reversal because it made no appropriate objection as required by Rule 51, F.R.C.P., 28 U.S.C.A. The appellant failed to state *distinctly* to the court below the matter in the charge to which it objected and the ground of its objection. The objection made was only a general objection to a charge based on *res ipsa loquitur,* and counsel stated in substance only that the California Courts had not extended the doctrine to manufacturers "except in the beverage cases". Counsel referred to MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A. 1916F, 696, and said that MacPherson was not a *res ipsa loquitur* case. In fact what Woodworkers Tool Works objected to was the giving of any charge on *res ipsa loquitur.* It is obvious that the requirements of Rule 51 were not met, and the doctrine of "plain error" is no longer available in this Circuit. Lynch v. Oregon Lumber Co., 9 Cir., 108 F.2d 283, 286. Consequently, we will not reverse the judgment on the ground that the charge of *res ipsa loquitur* was erroneous. See Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645; Blair v. Cullom, 2 Cir., 168 F.2d 622, 624, and Jack v. Craighead Rice Milling Co., 8 Cir., 167 F.2d 96.

■ The jury rendered a verdict fixing Byrne's "special damages at Eight Thousand Dollars, and * * * [his] general damages at One Thousand Dollars". Thereafter, a motion was made by Byrne to amend the verdict. An affidavit executed by the foreman of the jury was attached to the motion. The foreman averred that fifteen minutes after the verdict was returned and the jury was discharged he learned that an error had been made in filling in the form of verdict supplied to him as foreman as to the amounts awarded as damages and that due to a clerical error he had written the sum "$8,000.00 opposite the printed words 'Special Damages' and $1,000.00 opposite the printed words 'General Damages'"; whereas it was his intention to transpose these amounts. After argument and due consideration of the motion the court amended the verdict to show $8,000 recovered as general damages and $1,000 recovered as special damages, and a total verdict of $9,000.

Woodworkers Tool Works, Inc. asserts that this action by the court below permitted the foreman of the jury to impeach its verdict and that this was grave prejudicial error. We cannot agree. The error made was obviously clerical and the mistake was easily remedied by setting the amounts in their proper places. Clerical errors have long been readily corrected by the courts. See Hovey v. McDonald, 109 U.S. 150, 157, 3 S.Ct. 136, 27 L.Ed. 888. Since only a matter of procedure is involved we are free to follow the federal rule which is correctly set out in Smith v. Philadelphia Transp. Co., 3 Cir., 173 F.2d 721, 727. Rule 60(a), F.R.C.P., properly gives very wide latitude in correcting clerical mistakes in a judgment. But we note that the Supreme Court of California has effected the same result in the same way in recent cases. See Curtis v. San Pedro Transp. Co., 10 Cal.App.2d

---

13. It will be remembered that there is evidence to the effect that Chirby installed the panel raiser head on the planer and inspected it. There was no evidence that Byrne possessed such training or technical knowledge as would render him aware that the panel raiser head was defective even if he had inspected it. It may be that Chirby or Byrne would have perceived the defect in the metal if it had not been painted. Such questions are for the jury under proper instructions by the court.

547, 52 P.2d 528, and Pray v. Trower Lumber Co., 101 Cal.App. 482, 490–491, 281 P. 1036, 1039–1040.

Other questions raised by the appellant do not require discussion.

To the end that the court below may determine the question of whether the evidence now in the record is sufficient to sustain Byrne's contention that Woodworkers Tool Works made Woodworkers Supply Company, viz., Preuer, its agent for the service of process in California, we vacate the judgment and remand the cause with the direction to the court below to proceed to determine that issue. If the court determines the evidence of agency to be sufficient it will possess the authority to reinstate the judgment.