**E.F. HUTTON & COMPANY, INC.,**
**Plaintiff-Appellee-Cross-Appellant,**

v.

**Roger ARNEBERGH,**
**Defendant-Appellant-Cross-Appellee.**

**Nos. 83–6195/6222.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 8, 1985.

Decided Nov. 5, 1985.

As Amended on Denial of Rehearing
Jan. 23, 1986.

Robert W. Fischer, Jr., Adams, Duque & Hazeltine, Los Angeles, Cal., for plaintiff-appellee-cross-appellant.

Marcus Crahan, Jr., Los Angeles, Cal., for defendant-appellant-cross-appellee.

Before SCHROEDER, FLETCHER and FARRIS, Circuit Judges.

SCHROEDER, Circuit Judge.

These appeals stem from a sharply contested dispute, involving silver futures contracts, between a broker, E.F. Hutton & Co., Inc. ("Hutton"), and one of its customers, Roger Arnebergh. The jury rendered a verdict awarding damages to both sides. However, because of a lack of clarity in the verdict forms, the verdict was ambiguous and each side could interpret it as a net victory. That is what happened. Unfortunately, the ambiguity did not become apparent to the district court until several weeks after it had polled and discharged the jury.

How this confusion arose is worth relating in some detail. Hutton sued Arnebergh for the balance due in his account, and Arnebergh sued Hutton for breach of contract, negligence and conversion. The cases were consolidated for jury trial. The parties stipulated that Arnebergh owed Hutton an account balance of $336,614. Hutton requested that the jury verdict form include the fact that the parties had stipulated to that amount, but such a statement was omitted on the objection of Arnebergh. The jury was given a special verdict form as to Arnebergh's claims against Hutton and a general verdict form as to Hutton's claims against Arnebergh. The jury found in favor of Arnebergh on his contractual and conversion claims and found that Arnebergh and Hutton had been equally negligent in connection with Arnebergh's losses on one set of silver contracts. The jury awarded compensatory damages of $168,307 to both Hutton and Arnebergh. The amount was exactly half the stipulated debt balance in Arnebergh's account. The jury also awarded Arnebergh $100,000 in punitive damages. After the verdict came in, each side celebrated independently.

The problem with the verdict was that the forms did not provide a way for the jury to explain how it was dealing with the stipulated debt balance. When the verdict is read in the light of that balance, one cannot tell from the face of the forms which of the two possibilities was intended. One possibility, urged by Arnebergh, was that the two compensatory damage awards were to cancel each other out, leaving Arnebergh owing nothing to Hutton on his account and netting him the $100,000 punitive damage award. The other, urged by Hutton, was that the jury intended that Arnebergh would pay Hutton one-half of the account balance and that Hutton would absorb the other half. This would result, after set off of the punitive damage award, in Arnebergh owing Hutton $68,307. The only certainty about the verdict was its uncertainty.

The first indication the district court had that something was amiss was a call from a juror, about ten days after the jury had been discharged but before any judgment had been entered. The juror advised the court that Hutton's counsel had contacted the juror about the case. The court promptly and correctly scheduled an Order to Show Cause hearing regarding the jury contacts. It was at that hearing that the

parties disagreed over the meaning of the verdict and that the court perceived the ambiguity.

Hutton took the position at the hearing that the district court should recall the jury and inquire which meaning it intended. Arnebergh opposed interviewing the jury because he took the position that the verdict was unambiguous and that the court should enter judgment in accordance with Arnebergh's reading of it. Arnebergh was concerned, furthermore, that Hutton's *ex parte* contact with the jurors and the five week span of time since discharge would taint any reconvention. Though Arnebergh preserved his position for appeal that any action beside entry of judgment as he interpreted it was error, he stipulated, subject to that reservation, that the jury could be interviewed *in camera.* The judge then reconvened the jury, explained the problem and asked the jury to advise which result it intended.

The jurors retired, discussed the matter for less than five minutes, and returned to inform the court that they had intended the meaning urged by Hutton. The court then entered a judgment reflecting a net compensatory damage award of $168,307 to Hutton and awarding Arnebergh $100,000 in punitive damages. Both sides filed timely appeals. Arnebergh, in his appeal, asks that the judgment be reversed and a new judgment be entered awarding him net damages of $100,000. In the alternative, he asks that the district court's judgment be affirmed to the extent it awarded him $168,307 in compensatory damages and $100,000 in punitive damages and that there should be a new trial limited to Hutton's claim of $336,614 against him.

■ The threshold issue in Arnebergh's appeal from the award of compensatory damages is whether Arnebergh is correct in his assertion here, and before the district court, that the verdict was unambiguous and that judgment should have been entered with offsetting compensatory damage amounts for each side. We agree with the district court's conclusion that the verdict was ambiguous, and that it should not have entered judgment as requested by Arnebergh. The verdict simply did not explain how the balance in the account was to be treated. In these circumstances, the district court correctly declined to enter judgment on the basis of an ambiguous verdict. *Cf.* 5A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 49.04, at 49–44 & n. 15 (2d ed. 1985) *and* 6A J. Moore, J. Lucas & G. Grotheer, Jr., *Moore's Federal Practice* ¶ 59.08[4], at 59–128 & n. 70 (2d ed. 1984) (court should refrain from entering judgment if jury's special verdicts are inconsistent either with each other or the general verdict; jury should be instructed to deliberate further or a new trial ordered). This situation can be best analogized to an inconsistent verdict. *Cf. Dickerson v. Pritchard,* 706 F.2d 256, 258–59 (8th Cir.1983); *Rowe International, Inc. v. J-B Enterprises,* 647 F.2d 830, 835 (8th Cir.1981).

From our holding that the district court acted correctly in refusing to enter the ambiguous judgment, it does not necessarily follow that the court acted in accordance with applicable rules in reconvening the jury, five weeks after it was discharged, to interview it about the verdict. Fed.R.Evid. 606(b) forbids the receipt of juror testimony concerning matters occurring during the course of deliberations or concerning the jury's reasoning process in reaching a verdict.[1] *Traver v. Meshring,* 627 F.2d 934, 941 (9th Cir.1980). The only exceptions the rule expressly creates are

---

1. Fed.R.Evid 606(b) states:
   Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indict-

ment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concern-

with respect to juror testimony concerning whether the verdict was affected by "extraneous prejudicial information" or "any outside influence." Fed.R.Evid. 606(b). These circumstances were not present here. Hutton, however, argues that there is an additional exception for clarification of "clerical errors" within which this case falls. *See, e.g., Woodworkers Tool Works v. Byrne*, 191 F.2d 667, 676 (9th Cir.1951); *Allied Materials Corp. v. Superior Products Co.*, 620 F.2d 224, 225–26 (10th Cir. 1980); *Myrtle v. Checker Taxi Co.*, 279 F.2d 930, 934 (7th Cir.1960); *Mount Airy Lodge, Inc. v. Upjohn Co.*, 96 F.R.D. 378, 381 (E.D.Pa.1982); *cf. University Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 547 n. 43 (5th Cir.1974) (clerical error exception recognized in dicta). *But see People v. Romero*, 31 Cal.3d 685, 646 P.2d 824, 828–30, 183 Cal.Rptr. 663 (Cal. 1982). *See generally* 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 606[04] at 606–32 & n. 38 (1982 & Supp.1984); Annot., 18 A.L.R.3d 1132 (1968).

We do not need to reach that issue in this case, however, because both sides, for reasons which are understandable, preferred to have the district court question the jury rather than to risk the consequences of a new trial. If a Rule 606(b) violation had occurred when the court reconvened the jury weeks after discharge to clarify the ambiguous verdict, and if either party had asked for a new trial, the district court may well have been required to order one. *Cf. Malley-Duff & Associates v. Crown Life Insurance Co.*, 734 F.2d 133, 144–47 (3d Cir.1984) (inconsistent verdict requires granting of new trial); *Hopkins v. Coen*, 431 F.2d 1055, 1059 (6th Cir.1970) (when verdicts are inconsistent, a new trial must be granted); 5A J. Moore & J. Lucas, *supra*, ¶ 49.04 at 49–44 & n. 15 *and* 6A J. Moore, J. Lucas & G. Grotheer, Jr., *supra*, ¶ 59.08[4], at 59–128 & n. 70 (new trial granted if jury's verdict is inconsistent or confused).

■ Arnebergh, however, did not move for a new trial of all claims. He stipulated to the procedure used subject to his objections to the court's finding of ambiguity in the verdict and its refusal to enter judgment awarding him net damages of $100,000. Since we agree with the district court that the verdict was ambiguous, and he was not entitled to entry of such a judgment, we do not need to decide whether Rule 606(b) was violated. No reversible error occurred. *See Rowe International, Inc.*, 647 F.2d at 835 (court did not err in sending jury back for further deliberation after it returned inconsistent verdicts since both parties consented to procedure).

■ The remaining issues can be dealt with more summarily. Arnebergh contends that the district court misled the jurors during its post-trial interview. We have reviewed the transcript and find that the interview was both fair and well within the scope of the parties' stipulation as to the court's discretion in presenting the matter to the jury.

Arnebergh also contends that the court increased the amount of damages awarded by the jury to Hutton. Arnebergh relies on the principle that a court cannot increase the amount of a jury verdict it finds to be inadequate but must instead order a new trial. *See, e.g., DePinto v. Provident Sec. Life Ins. Co.*, 323 F.2d 826, 837–838 (9th Cir.1963), *cert. denied*, 376 U.S. 950, 84 S.Ct. 969, 11 L.Ed.2d 970 (1964). Here, however, the district court did not increase the amount of damages awarded by the jury. It entered a judgment which conformed to what the jury said it had intended.

In view of our resolution of Arnebergh's appeal, he is not entitled to costs and attorney's fees.

■ In its appeal, Hutton challenges the district court's instruction to the jury that

ing a matter about which he would be precluded from testifying be received for these

purposes.

it could award punitive damages to Arnebergh under his claims that Hutton breached its implied covenant of good faith and fair dealing. The district court did not err in this regard. While the issue was at the time uncertain in California, the court had authority on which to base its instruction. *See Smithers v. MGM*, 139 Cal.App.3d 643, 189 Cal.Rptr. 20 (1983).

The judgment of the district court is affirmed and each party is to bear its own costs.

FLETCHER, Circuit Judge, concurring:

I concur in the decision to affirm the district court's judgment. However, because I conclude that the jury's original verdict was unambiguous and was consistent with the district court's ultimate judgment, I find it unnecessary to reach the issues discussed by the majority.

The court instructed the jury that the parties had stipulated that Arnebergh owed Hutton an account balance of $336,614. The court's instructions provided that: "If you find that Roger Arnebergh has failed to establish all of the facts necessary to prove any of his several defenses or claims by a preponderance of the evidence, then you should render your verdict *for that amount* [$336,614] against the defendant Roger Arnebergh."

In its special verdict, the jury found that Hutton had breached the implied covenant of good faith and fair dealing in connection with Arnebergh's *silver futures contracts,* but *not* with his *spot silver contracts.* It explicitly found that *50%* of the parties' combined negligence in their transactions was attributable to Hutton, and *50%* was attributable to Arnebergh.

In light of the instructions the jury was given and the answers it provided on the special verdict form, the jury's original verdict made sense only as embodied in the district court's judgment. The jury awarded an identical amount of compensatory damages, $168,307, to Hutton and Arnebergh; this amount was exactly one-half of the stipulated account balance. Arnebergh maintains that the jury's intent was for the two compensatory damage awards to cancel one another out, and for Arnebergh to be left with the $100,000 punitive-damage award owed by Hutton. Yet such a verdict would have left Hutton recovering nothing out of Arnebergh's $336,614 account balance, despite the jury's conclusion that Hutton had breached its contractual duties in only one out of the two sets of contracts between the parties, and that Arnebergh was 50% responsible for the parties' combined negligence.

The only possible interpretation of the jury's verdict that is consistent with the facts of this case and the answers provided on the special verdict form is that the jury intended to "split the difference" on Arnebergh's outstanding account balance, awarding Arnebergh a $168,307 *reduction* in the amount he owed to Hutton, and awarding Hutton a $168,307 *net recovery* from Arnebergh. The punitive damages were to be subtracted from Hutton's net recovery.

The trial judge should not have found it necessary to reconvene or question the jury. The fact that he did so and the jury required less than five minutes to confirm the meaning of its original verdict demonstrates how unambiguous that verdict was.

I therefore agree that the district court's judgment should be affirmed.[1]

---

**1.** I do not agree, however, with the majority's conclusion that Arnebergh waived his right to challenge the district court's decision to reconvene the jury under Federal Rule of Evidence 606(b). Arnebergh explicitly preserved *two* objections to the jury interview in his pleading of March 1, 1983 and the parties' stipulation of March 2, 1983: (1) that the original verdict

unambiguously indicated that he was entitled to a net recovery of $100,000; *and* (2) that *any interview of the jury would violate Rule 606(b).*

I do not agree with the majority that Arnebergh somehow waived his Rule 606(b) objection because he failed to move for a new trial.