John McNULTY

v.

BORDEN, INC.

Civ. A. No. 76–3952.

United States District Court, E. D. Pennsylvania.

June 21, 1982.

---

John Clary, Clary & Mimnaugh, Philadelphia, Pa., for plaintiff.

Benjamin M. Quigg, Jr., James J. Rodgers, Morgan, Lewis & Bockius, Philadelphia, Pa., for defendant.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Plaintiff has moved for judgment notwithstanding the verdict or in the alternative for a new trial in this action tried before a jury on January 19–23 and 26–28, 1981. Plaintiff contends, in essence, that the Court's interrogatories to the jury and the jury instructions were confusing and misleading, with the result that the jury's answer to the second interrogatory was other than the one intended. Plaintiff also questions the necessity of the second interrogatory. Plaintiff further maintains that the Court erroneously granted a Rule 50 motion by directing a verdict on one count of the complaint. For the reasons set forth below, plaintiff's motions will be denied.

Plaintiff John J. McNulty was a sales manager employed by defendant Borden, Inc. McNulty alleged that his employment was terminated by Borden solely because he refused to offer deals to Acme, Inc., a supermarket chain, that were not being offered to Acme's competitors. McNulty alleged that to have offered such deals would have violated the Robinson-Patman Act, 15 U.S.C. § 13. Plaintiff filed suit in this Court, claiming a wrongful termination under Pennsylvania law. In addition, he made a claim under federal law for treble damages against Borden for its alleged violation of the Robinson-Patman Act.

At the close of evidence, a verdict was directed for the defendant on the Robinson-Patman Act claim. This Court concluded that the plaintiff had failed to prove that he was a customer or a competitor of the defendant, and therefore he had not proved a cause of action under the Robinson-Patman Act. (Record 7.3). *See Klein v. Lionel Corp.*, 237 F.2d 13 (3d Cir. 1956). As this Court stated when it made its ruling: "the evidence presented by the plaintiff would not be sufficient for a jury to reasonably conclude that there had been a violation of the Robinson-Patman Act." (Record 7.4).

■ On January 28, the jury returned a verdict in favor of Borden on plaintiff's state claim. Under Pennsylvania law, in order to state a cause of action for wrongful termination, a plaintiff must prove that he was asked to perform an act contrary to a clear mandate of public policy and that he was terminated solely for his refusal to perform such an action. *See Perks v. Firestone Tire and Rubber Co.*, 611 F.2d 1363

(3d Cir. 1979); *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974). The jury found, in answer to Interrogatory No. 1, that McNulty had been terminated solely for refusing to offer deals not being offered to Acme's competitors. The jury concluded, however, in response to Interrogatory No. 2, that Borden's actions in offering deals to Acme did not violate a clear mandate of public policy since there had been no violation of the Robinson-Patman Act. Accordingly, judgment was entered for the defendant.

The short answer to plaintiff's motion for a judgment n.o.v. is that, having failed to request a directed verdict at the close of evidence, plaintiff cannot now obtain a judgment n.o.v. *See* Fed.Rule of Civ.Pro. 50(b). A motion for a directed verdict is a prerequisite to a motion for a judgment notwithstanding the verdict. *Lowenstein v. Pepsi-Cola Bottling Co. of Pennsauken*, 536 F.2d 9, 10 (3d Cir.), *cert. denied*, 429 U.S. 966, 97 S.Ct. 396, 50 L.Ed.2d 334 (1976); *Mallick v. International Broth. of Elec. Workers*, 644 F.2d 228, 233 (3d Cir. 1981). "Unless a court has been alerted to deficiencies in proof by a motion for a directed verdict, a request that the court enter a judgment contrary to that of the jury is tantamount to asking the court to re-examine the facts as found by the jury. Such a re-examination would abridge the Seventh Amendment." *Mallick, supra* at 233. Accordingly, the petition for a judgment n.o.v. must be denied.

In considering plaintiff's motion for a new trial, it is our duty to be certain that there would be no miscarriage of justice if it were denied. *Kerns v. Consolidated Rail Corp.*, 90 F.R.D. 134 (E.D.Pa.1981); *Larsen v. International Business Mach. Corp.*, 87 F.R.D. 602 (E.D.Pa.1980); *Legette v. National R.R. Passenger Corp.*, 478 F.Supp. 1069 (E.D.Pa.1979). However, "the jury's verdict may be set aside only if manifest injustice will result if it were allowed to stand." *Kerns, supra.* Plaintiff contends that letting the verdict stand would amount to a miscarriage of justice, since the jury believed that it was finding for the plain-

tiff, not the defendant, and would have answered the second interrogatory differently had it known the effect of its answer on the ultimate result. In support of this contention, plaintiff has submitted an affidavit from one of the jurors. Plaintiff maintains that the jury's "mistake" was the result of the confusing nature of the interrogatory and the Court's reading of the Robinson-Patman Act to the jury. Finally, plaintiff maintains that the Court erred in asking the second interrogatory at all, since the first interrogatory alone was sufficient to impose liability on the defendant.

Plaintiff's reliance on a juror's affidavit to the effect that the jury reached the "wrong" verdict is misplaced, since the Federal Rules of Evidence prohibit a jury from impeaching its own verdict, except when "extraneous prejudicial information was improperly brought to the jury's attention or ... [when] any outside influence was improperly brought to bear upon the jury." F.R.E. 606(b). *See also McDonald v. Pless*, 238 U.S. 264, 35 S.Ct. 783, 785, 59 L.Ed. 1300 (1915). The situation presented here does not fall within this limited exception. As plaintiff recognizes, Rule 606(b) does not bar a juror's testimony that, through inadvertence or mistake, the verdict announced by the jury was not the one on which agreement had been reached. *Young v. United States*, 163 F.2d 187, 189 (10th Cir.), *cert. denied*, 332 U.S. 770, 68 S.Ct. 83, 92 L.Ed. 355 (1947); Weinstein's Evidence 606–32. Here, however, according to the affidavit of the juror, "it was his view shared by other jurors that the Plaintiff had not proven all the technical aspects of the Act, particularly as to injury to competition and restraint of trade..." Therefore, the jury, in response to the interrogatory requesting it to decide whether the defendant had violated the Robinson-Patman Act, agreed that the answer was "No", and this was the answer given in Court. Thus, whatever "mistake" the jury might have made is not one it can now correct by its testimony. The policies of finality and freedom of deliberation must prevail. *See* Notes of Advisory Committee on Proposed Rule 606, Subdivision (b).

■ Nor do we believe that letting the jury's responses to the interrogatories stand would produce a miscarriage of justice, even assuming, *arguendo*, that the jury believed its response to the first interrogatory, concerning the reasons for plaintiff's dismissal, was sufficient to impose liability on the defendant. The jury was not asked for a general verdict, but only for its answers to two interrogatories. Its responses to those interrogatories were insufficient for an imposition of liability. Its conclusions on the ultimate liability of the defendant are irrelevant. A juror cannot impeach his verdict by testifying that he was mistaken as to what verdict would be entered on the basis of his answers to interrogatories. *Vizzini v. Ford Motor Co.*, 72 F.R.D. 132, 135 (E.D.Pa.1976), *vacated on other grounds*, 569 F.2d 754 (3d Cir. 1977); *Solvex Corp. v. Freeman*, 459 F.Supp. 440, 449 (W.D.Va.1977).

■ As to the allegations that this Court's interrogatories and instructions were misleading, we fail to find them so. After the jury had been deliberating for some time, it asked the Court for additional instructions regarding Interrogatory No. 2; the Court repeated, in essence, its original instructions concerning this Interrogatory and concluded with this statement:

Now, to wrap it up, I want to say to you that if you find that Borden wanted the Plaintiff, Mr. McNulty, to violate the law, and that his refusal is the sole reason he was terminated; and if, in addition to that, the Plaintiff has proved by a preponderance of the evidence that this is the case, then in that situation Borden would be liable.

Now, if you find that the Plaintiff has proved by a preponderance of the evidence that the Defendant violated a clear mandate of public policy by terminating the Plaintiff for the sole reason that he refused to offer deals to Acme, which violated the Robinson-Patman Act, then you would answer Interrogatory No. 2 "Yes".

On the other hand, if you find that the Plaintiff has not proved by a preponderance of the evidence that the Defendant violated a clear mandate of public policy by terminating the Plaintiff's employment for the sole reason that he refused to offer deals to Acme which were not being offered to Acme competitors, and which violated the Robinson-Patman Act, then your answer to Interrogatory No. 2 should be "No".

The Court's charge as to Interrogatory No. 2 was clear and unambiguous. That Interrogatory No. 2 clearly conveyed to the jury what it was required to determine is made evident by the affidavit submitted by the juror. The affiant stated that the jury was not convinced that the Act had been violated and therefore answered "No". The Interrogatory, therefore, seems to have been understood by that juror. Furthermore, the reading of the Robinson-Patman Act to the jury as part of the Court's instructions to the jury was neither misleading nor prejudicial.

As to the necessity of the second interrogatory we reiterate that under Pennsylvania law an action for wrongful termination is only made out by a finding that an employee was dismissed solely for refusing to disobey a clear mandate of public policy. *See Geary, supra*. We cannot accept plaintiff's contention that his termination contravened any clear public policy absent a finding that the Robinson-Patman Act was violated. Plaintiff put forth no other public policy consideration.

■ Finally, plaintiff objects to our directed verdict on the issue of whether plaintiff proved a cause of action under the Robinson-Patman Act. In a memorandum dated July 3, 1979, this Court denied defendant's motion to dismiss this claim. We held that, considered in a light most favorable to him, plaintiff's allegations were sufficient for him to have standing under § 4 of the Clayton Act, 15 U.S.C. § 15,[1] to

1. Section 4 of the Clayton Act, 15 U.S.C. § 15 provides:

Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor

challenge violations of the Robinson-Patman Act.[2] However, after the close of all the evidence, the Court granted the defendant's Rule 50 motion on the ground that he had not stated a cause of action under the Robinson-Patman Act in that he failed to prove he was a customer or a competitor of the defendant.[3] The record shows that the Court, in ruling on the motion, stated as follows:

> ... I am granting the Rule 50 motion because the plaintiff in this case was a Unit Sales Manager. He was not a customer or a competitor.

> There was no evidence offered or not sufficient evidence on which the jury could find one of the essential elements of claims under Section 2(a) of the Robinson-Patman Act. And that essential element, in effect, is that he was a customer or a purchaser, and that there was no lessening of competition.

> \*   \*   \*   \*   \*   \*

> The Third Circuit, ... in Kline versus Lionel, said an individual cannot have any cause of action under 2(a) ... unless he is an actual purchaser. And there have been a long line of cases that have sustained that, and that seems to be the law.

In our Memorandum of July, 1979 (*See McNulty v. Borden, Inc.,* 474 F.Supp. 1111), this Court was guided by the recent decisions of the Third Circuit in *Bravman v. Bassett Furniture Industries, Inc.,* 552 F.2d 90 (3d Cir. 1977); *Cromer Co. v. Nuclear Materials & Equipment Corp.,* 543 F.2d 501 (3d Cir. 1976); *International Assn. etc. v. United Contractors Ass'n, Inc.,* 483 F.2d 384 (3d Cir. 1973), *amended,* 494 F.2d 1353 (1974). In *Bravman,* Judge Gibbons stated that "§ 4 standing analysis is essentially a balancing test comprised of many constant and variable factors;" 552 F.2d at 99; and he rejected any talismanic test of standing, such as the "direct injury" test (*See, e.g., Reibert v. Atlantic Richfield Co.,* 471 F.2d 727, 731 (10th Cir. 1973)), the "target area" test (*See, e.g., Karseal Corp. v. Richfield Oil Corp.,* 221 F.2d 358, 362 (9th Cir. 1955)), the "reasonably foreseeable" test (*See, e.g., Mulvey v. Samuel Goldwyn Productions,* 433 F.2d 1073, 1076 (9th Cir. 1970)), or the "zone of interest" test (*Malamud v. Sinclair Oil Corp.,* 521 F.2d 1142, 1151 (6th Cir. 1975)), Instead, Judge Gibbons adopted the balancing test set forth by Judge Garth in *Cromar, supra,* 543 F.2d at 506:

> ... [C]ourts must look to, among other factors, the nature of the industry in which the alleged antitrust violation exists, the relationship of the plaintiff to the alleged violation, and the alleged effect of the antitrust violation upon the plaintiff. Then, while recognizing that breaches of the antitrust laws have effects through society, a court must decide whether this plaintiff is one "whose protection is the fundamental purpose of the antitrust laws." [citation omitted]

---

... and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

2. Section 1 of the Robinson-Patman Act provides in pertinent part:

(a) It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality ... and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them.

3. Following our Memorandum of July 3, 1979, the defendant moved for certification for immediate appeal, pursuant to 28 U.S.C. § 1292(b). We denied this motion in a Memorandum of August 7, 1979. We realized at that time that our decision to grant standing to plaintiff involved a "controlling question of law as to which there is substantial ground for difference of opinion." 28 U.S.C. § 1292(b). We concluded, however, that an immediate appeal would not "materially advance the ultimate termination of the litigation," since there were other counts in the complaint, the trial of which would involve substantially the same evidence involved in a trial of the antitrust claim. Therefore, immediate appeal would neither have eliminated the necessity for trial nor have significantly simplified or abbreviated trial.

660

In applying this test, first we had to determine if McNulty was "injured in his business or property" as required by § 4 of the Clayton Act. We concluded that loss of employment was an injury to business or property, finding support from cases within and without the Third Circuit. *See McNulty v. Borden, Inc.*, 474 F.Supp. at 1116–1117. We stand by our earlier determination on this point.

Next we had to consider whether plaintiff's alleged injury occurred "by reason of anything forbidden in the antitrust laws", the second prong of § 4. There is no question that the plaintiff's alleged injury was brought about by an alleged violation of the Robinson-Patman Act, in that he refused to carry out orders which he believed violated the Act. A direct injury of this type, however, does not necessarily occur "by reason of anything forbidden in the antitrust laws;"[4] that is, we still had to determine whether plaintiff was one whose protection was the fundamental purpose of the antitrust laws.

In making our initial determination, we looked at the purposes of the treble damage remedy of § 4 of the Clayton Act, 15 U.S.C. § 15. This Court found that § 4 was intended to "open the door of justice to every man," to make the "antitrust weapon available to the people." 474 F.Supp. at 1118, *quoting* 51 Cong.Rec. 9073 (1914), 21 Cong. Rec. 3146 (1890). *See also Brunswick Corp. v. Pueblo Bowl-O-Mat*, 429 U.S. 477, 486 n. 10, 97 S.Ct. 690, 696 n. 10, 50 L.Ed.2d 701 (1977). We were persuaded that the "any person" language of § 4 should be interpreted expansively, and that an employee fired for refusing to participate in illegal activity and for threatening to expose that activity to prosecution could not have been intended to be excluded from the treble damages remedy by Congress. 474 F.Supp. at 1117–1118.

At the conclusion of the evidence presented at trial, however, this Court realized that its previous analysis was unsupported by the case law. We concluded that in addition to examining the purposes of Congress in enacting § 4 of the Clayton Act, it was also necessary to look at the purposes of the particular antitrust law alleged to have been violated; in this case, the Robinson-Patman Act. As the Supreme Court stated in a case involving § 7 of the Clayton Act:

Plainly, to recover damages respondents must prove more than that petitioner violated § 7, since such proof establishes only that injury may result. Respondents contend that the only additional element they need demonstrate is that they are in a worse position than they would have been had petitioner not committed the acts. The Court of Appeals agreed, holding compensable any loss "causally linked" to "the mere presence of the violation in the market" . . . Because this holding divorces antitrust recovery from the purposes of the antitrust laws without a clear statutory command to do so, we cannot agree with it.

\* \* \* \* \* \*

We therefore hold that the plaintiffs . . . must prove more than injury causally linked to an illegal presence in the market. Plaintiffs must prove *antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent, and that flows from that which makes the defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation. It should, in short, be "the type of loss that the claimed violations . . . would be likely to cause."

*Brunswick Corp., supra* at 486–87, 489, 97 S.Ct. at 696, 697. In following the reasoning of the Supreme Court, we looked to the purposes of the Robinson-Patman Act and

4. Neither the Supreme Court nor the Third Circuit has ever held that an employee who has been terminated because of his refusal to participate in an antitrust violation (e.g., violation of the Robinson-Patman Act) has suffered an injury "by reason of anything forbidden in the antitrust laws." The Ninth Circuit, however, recently reached the opposite conclusion, holding that such an employee could maintain a suit for treble damages. *See Ostrofe v. H. S. Crocker Co., Inc.*, 670 F.2d 1378 (9th Cir. 1982).

1967) and *Quinonez v. Nat'l Ass'n of Securities Dealers, Inc.*, 540 F.2d 824 (5th Cir. 1976),

found that it was primarily designed to protect purchasers and competitors, not employees fired because of their refusal to participate in the alleged antitrust violation. *See Klein v. Lionel Corporation*, 237 F.2d 13, 15 (3d Cir. 1956); *Thomas v. Amerada Hess Corp.*, 393 F.Supp. 58, 74–75 (M.D. Pa.1975); *R.S.E., Inc. v. Pennsy Supply Co.*, 489 F.Supp. 1227, 1232 (M.D.Pa.1980); *Schoenkopf v. Brown & Williamson Tobacco Corp.*, 637 F.2d 205, 210–11 (3d Cir. 1980). Accordingly, we directed a verdict for Borden at trial, and we affirm that decision here.

We are further supported by a recent decision by Judge Fullam involving facts quite similar to those before us. In *Booth v. Radio Shack Division*, C.A. No. 81–3670 (E.D.Pa., filed Jan. 28, 1982), plaintiff sued for treble damages, alleging that he was fired for refusing to carry out policies in violation of the Robinson-Patman Act. Judge Fullam, in dismissing the suit for lack of standing, wrote:

> The legal injury allegedly sustained by plaintiff was discharge from employment, not an injury "in his business or property by reason of anything forbidden in the antitrust laws . . ." 15 U.S.C. § 15. It is not the discrimination pricing which caused his discharge, but the fact that he complained about it.

*Id.* at 2. *See also Callahan v. Scott Paper Co.*, 541 F.Supp. 550 (E.D.Pa., 1982).

We are aware that there have been cases in which employees have been deemed sufficiently injured to have standing to sue under the antitrust laws. In these cases, unlike the one before us, the injuries have been the result of the anti-competitive effect of the alleged antitrust violation itself. In *Radovich v. National Football League*, 352 U.S. 445, 77 S.Ct. 390, 1 L.Ed.2d 456 (1957), for example, an athlete claimed that a boycott by the owners of all the teams prevented him from working. In *Nichols v. Spencer Int'l Press*, 371 F.2d 332 (7th Cir.

1967) and *Quinonez v. Nat'l Ass'n of Securities Dealers, Inc.*, 540 F.2d 824 (5th Cir. 1976), employees also claimed boycott arrangements whereby their mobility within the industry was impeded. And in *Int'l Ass'n Etc. v. United Contractors Ass'n, Inc.*, 483 F.2d 384 (3d Cir. 1973), *amended* 494 F.2d 1353 (1974), employees of a company against which a conspiracy was aimed had standing to complain of the conspiracy. Finally, there are cases in which manufacturers impose exclusive dealing requirements and territorial limitations on their sales representatives. Where such policies directly restrain the ability of the representatives to makes sales and place "unreasonable restraints on the distribution channels," the representatives have standing. *See Bravman, supra* at 100.

█ In holding that we were correct in directing a verdict for the defendant, we are not unmindful of the weighty policy considerations recently put forth by the Ninth Circuit in granting standing to an employee fired for refusing to carry out policies allegedly violative of § 1 of the Sherman Act. *See Ostrofe v. H. S. Crocker Co., Inc.*, 670 F.2d 1378 (9th Cir. 1982). There, Chief Judge Browning held that standing was useful in advancing the enforcement of the antitrust laws, since violations would largely go undetected unless employees came forward, and since employees would be unwilling to face possible discharge without the damages remedy. Moreover, he stated that employee suits could "prevent or mitigate injury to those who are the ultimate objects of the restraint." *Id.* at 1384–85. Nevertheless, we are constrained to hold as we do, because neither the Supreme Court nor the Third Circuit has yet extended standing under the antitrust laws as far as the Ninth Circuit has. Where the plaintiff does not claim an injury which directly results from the economic effects of the alleged antitrust violation, the plaintiff does not have an antitrust cause of action.[5]

---

**5.** Nevertheless, plaintiff's tort claim was properly sent to the jury because plaintiff could claim that he was wrongfully discharged for refusing to violate the antitrust laws even if he lacked standing to challenge the antitrust violations directly.

Accordingly, for the reasons heretofore stated, an order will be entered denying plaintiff's motions for judgment n.o.v. and for a new trial.