James **GIDLEWSKI**

v.

**BETTCHER INDUSTRIES, INC.**

**Civ. A. No. 83–570.**

United States District Court,
E.D. Pennsylvania.

March 18, 1985.

Judgment affirmed 3d Cir., 779 F.2d 42.

Fergus Norton, Haverford, Pa., for plaintiff.

L. Carter Anderson, Rawle & Henderson, Philadelphia, Pa., for defendant.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

The plaintiff, James Gidlewski, brought this diversity action against the defendant, Bettcher Industries, Inc., alleging that the plaintiff was injured as a result of a defective design in a machine (a fish press) which was manufactured by the defendant and leased to the plaintiff's employer, Mrs. Paul's Kitchens, Inc. Following the liability portion of the bifurcated trial, in response to interrogatories the jury found, based upon a preponderance of the evi-

dence, that the press was leased in a defective condition in that it was defectively designed; that the press was not substantially changed after it was leased from the defendant, prior to the accident; and that the defective condition of the press at the time it was leased was a proximate cause of the accident. Following the damages portion of the trial the jury returned a verdict in favor of the plaintiff in the amount of one million dollars.

The defendant has filed a motion for a new trial with regard to both liability and damages. For the reasons that follow, this Court has determined that the defendant's motion will be denied.

*Facts*

The plaintiff was injured on May 8, 1982, while he was cleaning the fish press which the defendant had leased and/or sold to the plaintiff's employer, Mrs. Paul's Kitchens, Inc. The evidence showed that the press in question was about six feet high, eight feet long, twenty-three inches wide, and weighed about three thousand pounds. At the time of the accident it was mounted on four steel swivel castor wheels, which raised the machine about six inches off the floor. The plaintiff, who had been working for Mrs. Paul's only about two weeks, was cleaning fish particles from the bottom of the press. The press was situated within one or two feet of a drain in the floor. As the plaintiff was cleaning the base of the press, the entire press suddenly toppled over onto him, pinning him to the floor. The plaintiff did not know exactly what caused the press to fall over, and there were no other eyewitnesses to the accident. The parties stipulated, however, that the accident occurred when the press (which rolled easily on the metal swivel castors) moved as the plaintiff was cleaning it, and one of the wheels fell into the drain, causing the press to topple over.

The plaintiff's expert testified that the press was defectively designed in that "the height of the center of mass is greater than two and one half times higher than the width of the support", making it dangerously top-heavy and unstable. Plaintiff's expert testified that three inches of movement by one of the wheels up or down would cause the press to topple over.

The defendant did not present any expert testimony refuting the plaintiff's contention that the press was unstable, but did contend that the press had been substantially changed after it had left the defendant's control in that it had been manufactured with two swivel castor wheels and with two *rigid* castor wheels (equipped with "brakes"). The defendant's product service manager testified that the press in question was designed with two castor swivel and two castor rigid wheels; that the "pull sheet" or production record with respect to the wheels (Ex. D–6a) showed that two swivel and two rigid castors were ordered and "pulled" for the press' assembly; and that the defendant did not design and manufacture presses with four steel swivel wheels as were on the machine at the time of the accident. Four employees of Mrs. Paul's Kitchens (plaintiff's employer) testified that the wheels had not been changed at any time after the press was delivered to Mrs. Paul's on May 8, 1980. Two of these witnesses were present when the press was delivered, and testified that at the time of delivery the press was equipped with the four steel swivel castor wheels which were on the press at the time of the accident.

Following the Court's charge to the jury on the liability issues, and during the course of the jury's deliberations, the jury sent the following note to the Court:

Exhibit D–6a, p. 12.

Since the swivel castors were the prime basis of the defendant's case, after examining the pull sheets we have observed that the 2 entries for the castors seem to have been either typed in at a different time or altered in some way since the type and alignment is different.

When the note was read to counsel, defendant's counsel requested the Court to instruct the jury that they may not speculate, and must base their decision on the evidence. The Court sent for the jury and instructed them as follows:

All right, glad to see you. Let me say that I received this note, and it is not in the form of a question. I am just going to read it out loud to you again into the record.

At the top it says, "Exhibit D–6–A, page 12. Since the swivel castors were the prime basis of the defendant's case, after examining the pull sheets, we have observed that two entries for the castors seem to have been either typed in at a different time or altered in some way, since the type and alignment is different."

I just wanted to state to you, the exhibits are evidence, and it is up to you to evaluate the evidence. I don't hesitate to tell you that I didn't even see this because, you see, the way the trial goes, I don't examine these documents that come in. So that the examination of the evidence and the evaluation of the evidence is up to you. The only thing I can tell you is, from the standpoint of the law, a jury shouldn't speculate or you shouldn't guess, but this is up to you. That's a piece of evidence, and you evaluate that, along with all the other evidence in the case. And you apply the law that I have given to you.

Of course, if you have a question, you can ask me the question, but if you are going to ask me a question about the, you know, the exhibits, I can't answer those, because the only questions I can answer are the legal questions. As I told you, it is your recollection of the evidence and, frankly, it is your evaluation of the evidence that counts. That's up to you.

Shortly thereafter, the jury returned with a verdict for the plaintiff in the liability portion of the case.

Trial on the plaintiff's damages portion of the case commenced immediately. Court was adjourned at the end of the day in the midst of plaintiff's testimony. Prior to the commencement of proceedings the following day, defendant's counsel requested the Court to "instruct the jury to reconsider its liability verdict and to instruct the jury that it may not base its verdict on an irrelevant consideration", i.e., the jury's alleged incorrect speculation that the wheel pull sheet had been altered. The Court denied the defendant's request, and evidence as to damages continued. That afternoon, defendant's counsel presented a motion for a mistrial, based on the jury's allegedly improper consideration of the evidence, and in the alternative a motion that the defendant's witness be recalled "for the purpose of persuading this jury that they should not punish my client for what they have apparently concluded was falsified evidence." The Court denied the defendant's motion, and stated, "I might add that you may wish me to charge the jury that they should not punish your client.... And I will certainly give a charge along those lines."

In the damages portion of the trial, the plaintiff presented testimony from the plaintiff himself, his mother, his treating orthopedic surgeon, his treating psychologist, and an economist who testified as to the plaintiff's future lost earning capacity. The evidence showed that the plaintiff had sustained a fractured pelvis, a dislocation of the sacroiliac joint, damage to the sciatic nerve, a fractured sacrum, a fractured right arm, and a ruptured or herniated disc in the lower back. After two years, the injury to the plaintiff's pelvis still had not stabilized, presenting (according to plaintiff's orthopedist) "an extremely serious-type situation". The prognosis for the future with respect to this injury, while not life-threatening, was described by the doctor as "real bad, real bad." The doctor stated that a major operation (fusion) to stabilize the plaintiff's pelvis area could be attempted, but that there was no guarantee that the plaintiff's condition would improve following such surgery. The doctor stated that, at least for the next three to five years, the plaintiff could not work for more than three or four hours per day (light work only), with frequent breaks to relieve the pain, and with no prolonged walking or prolonged sitting. These restrictions "could last forever", according to the orthopedist.

*Motion For New Trial*

In support of its motion for a new trial the defendant claims that the Court committed the following errors:

1. Permitting the plaintiff to amend the pretrial order at trial to permit the testimony of two employees of Mrs. Paul's;

2. Permitting the plaintiff to introduce evidence of an accident involving the same model press which occurred prior to the accident at issue in this case;

3. Refusing to permit the defendant, in the damages portion of the case, to reopen its liability case and allow the jury to reconsider its liability verdict after receiving further evidence in connection with the wheel "pull sheets";

4. Permitting certain testimony of plaintiff's economist, Dr. Mathis; and

5. Refusing to instruct the jury that future lost earnings should be reduced to their present value.

The defendant also contends that the jury's verdict on damages was excessive.

■ There are three grounds for granting a motion for a new trial: (1) manifest error of law; (2) manifest error of fact; and (3) newly discovered evidence. 6A J. Moore, J. Lucas, and G. Grother, *Moore's Federal Practice,* ¶ 59.07, at 59–73 (2d ed. 1984); *see Thomas v. E.J. Korvette, Inc.,* 476 F.2d 471, 474–75 (3d Cir.1973); *Marks v. Mobil Oil Corp.,* 562 F.Supp. 759, 764 (E.D.Pa.1983). In the present case the defendant (with the exception of its "excessive verdict" contention) submits that a new trial should be granted on the basis of trial error. Motions for a new trial require the exercise of discretion by the Court, whose duty is to ensure that the trial verdict does not result in a miscarriage of justice. *Marks v. Mobil Oil Corp.,* 562 F.Supp. at 764; *Woodward & Dickerson, Inc. v. Yoo Hoo Beverage Co.,* 502 F.Supp. 395 (E.D.Pa.1980). "The jury's verdict may be set aside only if manifest injustice will result if it were allowed to stand. The Court may not substitute its own judgment

for that of the jury merely because the Court may have reached a different conclusion." *Marks v. Mobil Oil Corp.,* 562 F.Supp. at 764 (citations omitted). Because motions for a new trial are addressed to the sound discretion of the trial court, appellate inquiry is limited to a determination "if there was prejudicial error by the trial court ... which adversely affected substantial rights" of the party moving for a new trial. *Thomas v. E.J. Korvette, Inc.,* 476 F.2d at 475.

*Amendment of Pre-Trial Order*

The defendant contends that the Court erred in allowing the plaintiff to call two employees of the plaintiff's employer to testify to the fact that the steel swivel castor wheels which were on the press at the time of the accident were on the press at the time of its delivery from the defendant to Mrs. Paul's Kitchens. Plaintiff had presented the uncontradicted testimony of two other employees of Mrs. Paul's that the wheels of the press had not been changed at any time from July of 1980, when the press was first inspected by the plant's safety director, up until the time of the plaintiff's accident in May of 1982. The Court permitted the plaintiff to amend the pre-trial order at trial to allow the testimony of two additional employees of Mrs. Paul's (the maintenance supervisor and the project engineer), who stated that they were present at the time of delivery of the press on May 8, 1980, and that they noticed that the press was equipped with four steel swivel castors because, in the words of one, "it rolled darn nice."

■ This Court's Pre-Trial Order states "Amendments to this Pre-trial Order will not be permitted except where the Court determines that manifest injustice would result if the amendment is not allowed." *See* Fed.R.Civ.P. 16(c); *Ely v. Reading Co.,* 424 F.2d 758, 763 (3d Cir.1970). In view of the defendant's contention that the press had been substantially changed by replacement of the original wheels, this Court had no hesitancy in finding that manifest injus-

tice would occur if the Court denied the plaintiff's request to amend the Pre-Trial Order to permit the testimony of two witnesses who were present at the time the press was delivered. The Third Circuit has stated that the exclusion of critical evidence for failure of a witness to be listed in the Pre-Trial Order is "an extreme sanction" which is "not normally to be imposed absent a showing of willful deception or flagrant disregard of a Court order by the proponent of the evidence." *Meyers v. Pennypack Woods Home Ownership Ass'n,* 559 F.2d 894, 905 (3d Cir.1977) (citation omitted). No such showing was made in this case. Indeed, it does not appear in the record that defendant's counsel objected to the amendment to the pre-trial order.

### Evidence of Prior Accident

Through the defendant's answers to plaintiff's interrogatories, plaintiff learned that an accident involving the same model press had occurred in Ames, Iowa on February 15, 1982, some three months prior to the plaintiff's accident. According to the defendant's answer to the plaintiff's request for reports of prior accidents involving the same model press, "an accident was reported by Carriage House Meat and Provision Company [in Ames, Iowa] on February 15, 1982. The company reported that a castor of its press had broken, causing the [    ] press to roll on an employee." At trial the defendant objected to the admission of such evidence on the ground that the castor had broken in Iowa because the company had been in the habit of pushing it sideways, causing improper wear on the wheel and castor. Counsel stated that he "didn't want the jury to think that this [prior accident] was a defective castor or a defective machine." Counsel for defendant requested the opportunity to present evidence to explain why the castor on the press involved in the Iowa accident had broken. The Court permitted the defendant's answer to the plaintiff's interrogatory with respect to the prior accident to be read to the jury, and also permitted the defendant's witness (the product service manager) to explain that the castor in the Iowa acci-

dent had broken because the press "had been pushed sideways many times". On cross-examination, defendant's product service manager conceded that as a result of the castor breaking, the press in Iowa lost elevation at the point of the broken castor, and toppled over.

■ The Third Circuit has held that in products liability cases "evidence of prior accidents involving the same product under similar circumstances is admissible to show notice to the defendant of the danger, to show existence of the danger, and to show the cause of the accident." *Gumbs v. International Harvester, Inc.,* 718 F.2d 88, 97 (3d Cir.1983). In the present case plaintiff contended that the press was defectively designed because it was "top-heavy" and likely to topple over as a result of a slight rise or fall in the elevation of one of its wheels. In this case it was stipulated that one of the wheels on the press fell into a drain. In the Iowa case the wheel castor had broken. In both instances the result was that the loss of a wheel's elevation apparently caused the machine to topple. Although the defendant now contends, in his post-trial motion, that the Iowa press was "pushed" over, the defendant was afforded the opportunity to present the circumstances of the Iowa toppling-over incident. There is therefore no error in the Court's ruling that the Iowa accident involved "the same product under similar circumstances" and therefore was relevant and admissible under Fed.R.Evid. 401.

### Reconsideration of Liability Verdict

The defendant contends that the Court erred in failing to set aside the jury's verdict as to liability and in denying the defendant's request to present evidence that no falsification of defendant's exhibit D–6a (the "pull sheet" on the press wheels) had occurred. As noted above, during the course of its deliberations as to liability, the jury sent a note to the Court stating that the jury had "observed" that the entries for the wheel castors "seemed" to have been typed in at a different time or

altered in some way. At that time the defendant requested the Court to instruct the jury that it should not speculate. The Court granted the defendant's request and so instructed the jury, without any objection by the defendant.

▮ It is clear that after the verdict had been rendered as to liability, the defendant, speculating that the jury may have believed exhibit D–6a to have been falsified, sought to have a "second bite at the apple" (with respect to liability) by requesting the Court to set aside the jury's verdict and permit the defendant to present additional evidence concerning exhibit D–6a. Rule 606(b) of the Federal Rules of Evidence bars inquiry of any juror

> as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict ... except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.

In this case it is not contended that any extraneous or outside information was presented to the jury or that any improper influence occurred. Nor is it contended that through inadvertence or mistake the verdict announced was not the verdict on which agreement was reached. *See Mount Airy Lodge, Inc. v. Upjohn Co.*, 96 F.R.D. 378, 381 (E.D.Pa.1982); *McNulty v. Borden*, 542 F.Supp. 655, 657 (E.D.Pa.1982). The defendant speculates that the jury may have misconstrued exhibit D–6a, which was introduced into evidence by the defendant. As the Third Circuit has stated,

> Long-settled considerations of public policy dictate that mistake of the testimony, misapprehension of the law, error in computation, irregular or illegal methods of arriving at damages, unsound reasons or improper motives, misconduct during the trial or in the jury room ... [cannot constitute grounds to overturn a verdict].

*Domeracki v. Humble Oil & Refining Co.*, 443 F.2d 1245, 1247 (3d Cir.1971) (citations omitted). *See also McDonald v. Pless*, 238 U.S. 264, 267, 35 S.Ct. 783, 784, 59 L.Ed. 1300 (1915); *Chicago, Rock Island and Pacific Railroad Co. v. Speth*, 404 F.2d 291, 295–96 (7th Cir.1968). Clearly a verdict may not be overturned on a party's speculation that the jury *may* have misinterpreted a piece of evidence which that party submitted. There is no indication whatsoever that the jury based its verdict on its interpretation of exhibit D–6a. Furthermore, this Court, at the defendant's request, instructed the jury to evaluate the evidence but not to speculate or guess, and the Court must presume that this instruction was followed. The defendant has not cited, nor has this Court discovered, any authority for reopening a case to take additional evidence, following a jury verdict, based on a party's contention that the jury might have misinterpreted a piece of evidence which it presented.

*Damages Issues*

The defendant contends that plaintiff's economist, Dr. Mathis, was not qualified to testify as to the extent of plaintiff's loss of earning power based on a 75% disability. Dr. Mathis, an economist with significant experience in the field of employment opportunity, testified concerning his opinion of the plaintiff's future employment opportunities. He based his opinion in part upon the treating orthopedist's prognosis of the plaintiff's physical disabilities. As noted above, the treating orthopedist testified that because of the severe injury to the plaintiff's pelvis, the plaintiff was unable to work for more than three or four hours per day (light work only), with frequent breaks needed to relieve the constant pain in his lower back and pelvic area. The treating orthopedist also stated that the plaintiff could do no prolonged walking or standing, that his disability was "permanent", and that the restrictions described above would last at least three to five years, and "could last forever".

Dr. Mathis, on the basis of the treating orthopedist's opinion and on the basis of

the age, education, and work history of the plaintiff, testified that there were no jobs in the marketplace which the plaintiff could perform, and that a conservative estimate of the plaintiff's future loss of earning capacity was 75%. Dr. Mathis then calculated the plaintiff's future loss of earning capacity at approximately $815,000.

It is clear that because of the inherent element of uncertainty present in any estimate of future loss of earning power, the fact and the extent of the impairment are jury questions. Defendant also presented to the jury the testimony of an expert witness who made several projected loss of earning power calculations based upon a lesser percentage of disability.

The defendant also contends that, given the current state of the economy in this country, the Pennsylvania "offset" rule of damages as set forth in *Kaczkowski v. Bolubasz*, 491 Pa. 561, 421 A.2d 1027 (1980) should not be applied, and that the jury should have been instructed (contrary to *Bolubasz*), that, in connection with loss of future earning capacity, any award should be discounted to present value. This is a diversity case, and the jury was instructed pursuant to the law of Pennsylvania as set forth in *Bolubasz*.

Finally, the defendant contends that the one million dollar verdict was excessive. A new trial on damages on the basis of an excessive verdict may be granted only when the award is so excessive that it shocks the conscience of the Court. *Gullborg v. Rizzo*, 331 F.2d 557, 561 (3d Cir. 1964); *Marks v. Mobil Oil, Inc.*, 562 F.Supp. at 773. The conscience of this Court is not shocked by this verdict. There is ample evidence of serious injuries causing pain and suffering, both past and future, as well as loss of past and future earning capacity.

For all the reasons set forth above, this Court has determined that none of the defendant's allegations of error, either singly or in combination, provide a sufficient basis upon which to grant a new trial. Accordingly, the defendant's motion for a new trial will be denied.